NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PERRAULT JEAN-PAUL, | : |
| | : Civil Case No. 09-3928 (FSH) (PS) |
| Plaintiff, | : |
| | : **OPINION** |
| v. | : |
| | : Date: May 14, 2010 |
| JERSEY CITY DEPARTMENT OF | : |
| HOUSING, ECONOMIC DEVELOPMENT | : |
| & COMMERCE, *et al.* | : |
| | : |
| Defendants. | : |
| | : |

**HOCHBERG, District Judge**:

**I.     Introduction**

Plaintiff *pro se* brings this lawsuit alleging discrimination against him, as a class of one, by defendants, in violation of the equal protection clause of the Fourteenth Amendment, and a taking without just compensation, in violation of the Fifth Amendment.  Plaintiff owns several rental properties in Jersey City, New Jersey.  One of his properties has been disallowed the use of a driveway for off-street parking, pursuant to a local zoning ordinance, giving rise to this action.  Defendants are: the Jersey City Department of Housing, Economic Development & Commerce; Carl Czaplicki, Director; Anthony Lambiase, Director of Zoning Enforcement; and William De Isai[1] and Nick Taylor, Zoning Enforcement Officers.  Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

**II.     Summary of the Allegations**

---

[1]     Defendants Carl Czaplicki and William De Isai were erroneously captioned as Karl Czaplicki and William Diazi.

The following is a summary of the allegations in the second amended complaint, which the Court must accept as true for the purposes of this motion. Plaintiff has owned a rental property at 23 Magnolia Avenue in Jersey City, NJ since February 2003. The property includes a driveway in front of the building that (until the events described herein) had allegedly been in continuous use since 1974. In May 2001, a zoning ordinance went into effect in Jersey City, banning off-street parking between the building and the street. Plaintiff received a notice of violation on July 19, 2007, signed by defendant Lambiase. Plaintiff does not dispute that his driveway is in technical violation of the ordinance. Plaintiff allegedly requested by letter to defendant De Isai that his driveway be grandfathered in, since it had been in continuous use since 1974, but the request was ignored. On April 21, 2008, plaintiff was notified that his application for the use of his driveway was denied by letter from defendant Lambiase. Plaintiff appealed this decision to the Zoning Board of Adjustment by letter dated April 23, 2008. On September 3, 2008, plaintiff allegedly received another notice of violation from defendant Taylor. He allegedly requested an explanation by letter to defendant Taylor dated September 14, 2008, but his request was ignored.

On February 19, 2009, the Zoning Board of Adjustment denied his appeal based on three findings: 1) for a parking space to have been legally created before 2001, a permit must be on file with the City of Jersey City, and no such permit is on file; 2) the front yard is not deep enough to have qualified for a permit under the standards prior to 2001; and 3) the sidewalk in front of 23 Magnolia Ave. is continuous with several other houses. Plaintiff alleges that these reasons for denying his appeal were pretextual, as evidenced by the fact that neighboring buildings sharing the same characteristics are allowed to use their driveways.

Plaintiff claims that he was treated differently from other similarly situated landowners on his block and throughout the residential neighborhoods of Journal Square in Jersey City, who have allegedly not been cited for using their driveways despite not being in conformity with the ordinance. He alleges that this difference in treatment is "wholly arbitrary" and has devalued plaintiff's property relative to the others on the block. The disallowance of plaintiff's driveway has allegedly devalued by 20% his property at 23 Magnolia Avenue, which had been assessed at $610,000 prior to the events described herein.

Plaintiff further alleges that the different treatment he has received, as compared to others similarly situated, was intentional. In the second amended complaint, he recites two prior occasions when zoning enforcement officers issued him tickets for zoning violations involving basement apartments in his other rental properties. Plaintiff's appearances before the Municipal Court in response to these tickets, which he describes as "court battles," allegedly resulted in "animosity" toward plaintiff by zoning enforcement officers. Plaintiff claims that this animosity motivated defendants to issue him citations for his illegal driveway at 23 Magnolia Avenue, giving rise to the instant action.

Plaintiff asserts two causes of action: 1) alleged violations of the equal protection clause; and 2) an alleged unconstitutional taking of plaintiff's driveway without just compensation. He demands injunctive relief and damages.[2]

---

[2] Plaintiff also demands that the Court order defendants to provide plaintiff with evidence that he was not treated differently from others similarly situated or disallow all other driveways on the same block as 23 Magnolia Avenue. The former is to be accomplished through discovery and not by final judgment of this Court. The latter is impermissible, since the other landowners on Magnolia Avenue are not parties to this case. The Court cannot enter an adverse judgment against non-parties. Plaintiff also lacks standing to seek such relief.

### III.     Procedural History

Plaintiff filed the complaint on August 9, 2009. Defendants filed a motion to dismiss on September 17, 2009. On November 13, 2009, the Magistrate Judge entered an order terminating defendants' motion and permitting plaintiff to amend his complaint by November 30, 2009 to add the Zoning Board of Adjustment as a defendant. Plaintiff filed an amended complaint on November 30 but failed to join the Zoning Board of Adjustment. Defendants filed an answer on December 18, 2009. On January 11, 2010, defendants moved for judgment on the pleadings. Plaintiff subsequently requested leave yet again to join the Zoning Board of Adjustment, but the Magistrate Judge denied the request by order dated January 14, 2010. Plaintiff did not appeal the Magistrate Judge's order to this Court. Thus, the Zoning Board of Adjustment is not a party in this case.

Upon considering defendants' second motion, this Court, again, granted *pro se* plaintiff leave to amend his complaint to allege whether defendants *intentionally* treated plaintiff differently from others similarly situated by denying his application for a variance and, if so, to state the factual basis for that allegation. In response, plaintiff filed a second amended complaint on March 22, 2010,[3] amplifying his allegations and adding the Zoning Board of Adjustment to the caption. On March 30, 2010, the Court terminated defendants' January 11, 2010 motion for judgment on the pleadings and granted defendants leave to renew their motion in light of

---

[3] As set forth in the Summary of the Allegations, Section II, *supra*, plaintiff alleged that defendants' actions were intentional but did not allege that defendants were involved in the Zoning Board of Adjustment's decision to deny plaintiff's appeal, whether by conspiracy, activities behind the scenes, or otherwise.

plaintiff's new allegations.  In the same order, the Court struck the Zoning Board of Adjustment from the caption as violative of the Magistrate Judge's January 14, 2010 order.

**IV.     Standard of Review**

The standard governing defendants' motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the well-known standard governing a motion to dismiss pursuant to Rule 12(b)(6). *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).  A complaint filed by a *pro se* plaintiff is held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  In evaluating a motion to dismiss, the Court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if plaintiff's claims are based on those documents. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1992).

V.  Discussion

    A.  **Failure to State a Claim**

        i.  <u>Plaintiff States a Claim Under *Olech*</u>

It is settled law that a landowner-plaintiff states a claim under 42 U.S.C. § 1983 if he alleges that state zoning officials violated his rights under the equal protection clause as a "class of one" by intentionally treating him differently from others similarly situated without a rational basis. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Windsor Jewels of Pa. v. Bristol Twp.*, No. Civ.A. 01-CV-0553, 2002 WL 31999367, at *6-*7 (E.D. Pa. Mar. 28, 2002). The defendant village in *Olech* arbitrarily demanded a 33-foot easement from the plaintiff to connect her property to the municipal waterline, instead of the 15-foot easement demanded of all others similarly situated, in retaliation for a prior lawsuit brought by the plaintiff against the village.

As applied to this case, plaintiff's allegations, taken as true and viewed in the light most favorable to plaintiff, are sufficient to state an equal protection claim under *Olech* against the individual defendants (as distinct from the Jersey City Department of Housing, Economic Development & Commerce, which is addressed below). Plaintiff alleges that the individual defendants intentionally targeted him for enforcement of the zoning ordinance, to the exclusion of all other similarly situated landowners in his neighborhood, out of "animosity." Plaintiff essentially alleges discriminatory enforcement of the ordinance against him, as a class of one. Unlike the fact pattern in *Olech*, the Jersey City ordinance is of city-wide applicability. Nevertheless, under *Olech* city officers may not intentionally enforce it in a discriminatory manner against one individual, as plaintiff alleges occurred.

### ii. Plaintiff May Not Be Entitled to the Relief He Seeks

The fact that the complaint states a claim does not mean that plaintiff's case will not face substantial difficulties. First, the individual zoning officers report to the Department of Housing, Economic Development & Commerce; their actions are appealable to the Zoning Board of Adjustment, which is not a party to this case because plaintiff failed to timely join it. Plaintiff availed himself of his right to appeal to the Zoning Board of Adjustment, which ruled that plaintiff was not entitled to a variance on February 19, 2009, thus affirming the actions of the zoning officers. Plaintiff has not alleged any conspiracy or concerted action between the zoning officers and the Zoning Board of Adjustment. It is even possible that the denial of plaintiff's appeal by the Zoning Board of Adjustment would constitute an intervening or superceding cause of plaintiff's claim of injuries caused by the zoning officers.

Second, the Zoning Board of Adjustment's denial of a variance is appealable to the New Jersey Superior Court via an action in lieu of prerogative writ. *See* N.J. Court R. 4:69. Yet plaintiff did not file any such appeal of the Board's decision, and the 45-day statute of limitations to do so expired on April 6, 2009. N.J. Court R. 4:69-6(a). Thus, the Zoning Board of Adjustment's ruling stands. This lawsuit, which was brought on August 7, 2009, is not a substitute forum for appealing the decision of the Zoning Board of Adjustment. Indeed plaintiff may well be collaterally estopped from relitigating the Zoning Board of Adjustment's factual findings. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (holding that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's

factfinding the same preclusive effect to which it would be entitled in the State's courts") (internal alterations and quotations omitted).

Third, with respect to the Department of Housing, Economic Development & Commerce, plaintiff does not appear to allege that the alleged wrongs inflicted on him arose from an official policy or custom. Rather, he alleges that the individual defendants wronged him out of animosity. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Iqbal*, 129 S. Ct. at 1948 (explaining that there is no vicarious liability under § 1983). Plaintiff's claim against the Department of Housing, Economic Development & Commerce, as distinct from the individual defendants, will ultimately fail absent a showing that his alleged injuries were caused by a departmental policy or custom.

Finally, plaintiff claims in his second cause of action that he is entitled to just compensation under the Fifth Amendment for the disallowance of his driveway. He alleges that 23 Magnolia Avenue has been devalued by 20% (*i.e.*, $122,000) and that he has had to pay certain parking fees. Under certain circumstances, local land-use regulation, such as zoning, can constitute a taking by devaluing property, entitling the landowner to just compensation. *See Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). Although the Supreme Court has not yet articulated a clear standard for how far is "too far," it is abundantly clear that

"too far" is likely closer to a 95% diminution of value than the 20% alleged by plaintiff.[4]  *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 n.8 (1992) (explaining that in some cases, a landowner with a 95% loss will receive no compensation, depending on the circumstances); *Mahon*, 260 U.S. at 413 ("Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.").  In determining whether a regulation goes too far, the Court is guided by such factors as the "economic impact of the regulation on the claimant, ... the extent to which the regulation has interfered with distinct investment-backed expectations[, and] the character of the governmental action." *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978).  These are all issues to be resolved on a factual record.

### B. Qualified Immunity

Although the Court finds that plaintiff's allegations state a claim for a violation of the equal protection clause by the individual defendants, notwithstanding the factual difficulties plaintiff will face, the present inquiry does not end there.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotations omitted).  In order to determine whether defendants should enjoy qualified immunity, the Court must determine 1) whether defendants violated plaintiff's constitutional rights and 2) whether those constitutional

---

[4] Parking fees are not recoverable under the Fifth Amendment.  Once it has been determined that there was a regulatory taking, the government must condemn the property, and the measure of recovery is the "fair market value of the property at the time of the taking." *See United States v. Reynolds*, 397 U.S. 14, 15-16 (1970).

rights were clearly established at the time of the alleged violation. *Id.* at 818. Unless both prongs are satisfied, plaintiff's damages claims against the individual defendants must be dismissed.

It is an "objective inquiry" whether the alleged violation was "clearly established" such that reasonable zoning enforcement officers, in defendants' place, would have known that defendants' alleged actions were unlawful. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). Defendants argue that the second amended complaint merely shows that defendants were doing their jobs by issuing tickets for zoning violations, several of which were paid by defendant, and that, thus, their actions were not objectively unreasonable.

In this case, the qualified immunity inquiry is too highly intertwined with the facts to resolve on a motion for judgment on the pleadings. However, qualified immunity is an immunity from *suit*, not merely from liability. The Supreme Court has emphasized "the importance of resolving qualified immunity questions at the earliest possible stage in litigation." *Pearson*, 129 S. Ct. at 815. Accordingly, defendants' motion shall be converted to a motion for summary judgment to be heard on an expedited basis. The parties have already filed certain factual materials in connection with this motion, which shall be considered on summary judgment. The parties may file additional briefs, affidavits, and other materials, consistent with Local Civil Rule 56.1,[5] to aid the Court in considering the summary judgment motion, according to a briefing schedule to be issued.

---

[5] The Local Civil Rules are publicly available in the Court's library in the Martin Luther King, Jr. Federal Building and U.S. Courthouse, 50 Walnut St. Newark, NJ 07101 or online at http://www.njd.uscourts.gov/rules/completeRules2010.pdf.

**VI.     Conclusion**

For the reasons set forth in this opinion, defendant's motion for judgment on the pleadings is converted to a motion for summary judgment. An appropriate order and expedited briefing schedule will issue.

                                                     **/s/  Faith S. Hochberg**
                                                     Hon. Faith S. Hochberg, U.S.D.J.